**James NEGOSKI, Plaintiff,**

**v.**

**COUNTRY LIFE INSURANCE COMPA-NY, an Illinois corporation, and Larry Stephens, Defendants.**

**No. 92 C 6990.**

United States District Court,
N.D. Illinois, E.D.

Oct. 18, 1993.

Bruce Falk, Joliet, IL, for plaintiff James Negoski.

Michael Colin O'Neill, Garretson & Santora, Ltd., Chicago, IL, John R. Wienold, Law Offices of John R. Wienold, Ltd., Aurora, IL, for defendant Country Life Ins. Co.

Thomas C. Broderick, Thomas Henry Dunn, Broderick, Steiger & Zupancic, Chicago, IL, for defendant Larry Stephens.

### MEMORANDUM AND ORDER

MORAN, Chief Judge.

Plaintiff James Negoski (Negoski) brings this action against defendants Country Life Insurance Company (Country Life) and Larry Stephens (Stephens) under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.* Before this court now are defendant Country Life's motion for summary judgment and plaintiff Negoski's cross-motion for summary judgment. Federal subject matter jurisdiction is based on 28 U.S.C. § 1331. For reasons stated below, defendant Country Life's motion is denied and plaintiff Negoski's cross-motion is granted.

### FACTS

The facts of this case are essentially undisputed. In late 1989 and early 1990, Stephens, an insurance broker, contacted Negoski's employer, JMS, Inc., about transferring its health care coverage to Country Life. Negoski's daughter Erica, who was born with bilateral clubfoot deformities, was covered under JMS' then-existing health care plan. Negoski expressed his concern that any new policy would continue coverage of the costly treatment for Erica's clubfoot condition. He alleges that Stephens assured him that Erica would be covered if JMS transferred their group plan to Country Life, although the child would be subject to a pre-existing condition limit for a period of time.[1]

---

1. The pre-existing conditions limit provided that:

Insurance covers a pre-existing condition only after:

(a) 90 consecutive days without diagnosis, treatment, expense being incurred for the condition, or distinct symptoms being shown; or
(b) 12 consecutive months of being insured.

JMS decided to transfer insurance coverage for its two employees to Country Life. Negoski completed an application for health insurance with Country Life in February 1990. Stephens asked Negoski questions and filled out the application, and Negoski signed it when it was completed. Negoski disclosed in this application that Erica was born with bilateral clubfoot deformities, that she had surgery at six months of age to correct this condition, for which she was hospitalized three days, and that she wore casts for three months. Further noted in the application was Erica's course of treatment at that time: she wore night splints and was monitored by six-month checkups. Negoski also stated that there was no disability and that no further surgery was "contemplated" for Erica. Country Life issued insurance to Negoski and his family, including Erica, effective March 1, 1990.

In April 1991, Erica underwent surgery to correct her clubfoot condition. As a result of that surgery and related medical care the Negoskis incurred expenses of $11,903.43. The Negoskis submitted a claim for these expenses to Country Life. The carrier, however, denied the claim and rescinded coverage for Erica.

Country Life contends that Negoski made a material misrepresentation in his application for insurance when he stated that "no further surgery [was] contemplated." It is on the interpretation of the term "contemplated" that the parties are divided. Negoski met with Erica's doctor, Dr. Kelkian, in January 1990, for one of Erica's regular checkups. Dr. Kelkian's notes from the meeting delineate the non-surgical course of treatment they were pursuing: "We will continue the night splinting, and I will see them back in four months. She is walking with shoes now." The notes go on to state that "[i]f there are persistent problems the child may need midtarsal work such as cunnieform [sic] osteotomy and lateral column shortening. Presently that is not indicated...."

Negoski maintains that he fully disclosed all he knew about Erica's condition and that at the time of the application he had been informed and believed that further surgery would not be necessary. Country Life contends that by stating no further surgery was "contemplated" Negoski represented that there was no *possibility* of further surgery. Country Life maintains that had it known further surgery for Erica was possible, it would not have underwritten her coverage.

## DISCUSSION

### I. Summary Judgment

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Renovitch v. Kaufman,* 905 F.2d 1040, 1044 (7th Cir.1990). In deciding a motion for summary judgment the court must read all facts in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Richardson v. Penfold,* 839 F.2d 392, 394 (7th Cir.1988). Because both Country Life and Negoski have moved for summary judgment, we have considered each motion independently of the other, construing the facts in accordance with the above standard.

The main issue in this case is whether Negoski's statement that no further surgery was "contemplated" for Erica constitutes a material misrepresentation, allowing Country Life to deny the claim and rescind coverage for the child. Federal, not Illinois, law controls because the health care plan at issue qualifies as an ERISA benefit plan. In cases involving qualified employee benefit plans ERISA preempts state law. 29 U.S.C. § 1144(a); *Rivera v. Benefit Trust Life Ins. Co.,* 921 F.2d 692, 695 n. 1 (7th Cir.1991). However, federal courts may look to state law for guidance in formulating federal common law, provided that the state law is consistent with the policies underlying ERISA. *Fox Valley & Vicinity Constr. Workers Pension Fund v. Brown,* 897 F.2d 275, 281 (7th Cir.), *cert. denied,* 498 U.S. 820, 111 S.Ct. 67, 112 L.Ed.2d 41 (1990).

Under both ERISA and Illinois law a material misrepresentation in an application for insurance will permit an insurer to deny benefits. *Rivera,* 921 F.2d at 695 n. 1. A misrepresentation occurs when an appli-

cant states something as a fact that is untrue, or where an insured provides an incomplete answer or fails to disclose information in response to an insurance application's question. *Northern Life Ins. Co. v. Ippolito Real Estate*, 234 Ill.App.3d 792, 176 Ill.Dec. 75, 81, 601 N.E.2d 773, 779 (1992); *Cohen v. Washington Nat'l Ins. Co.*, 175 Ill.App.3d 517, 124 Ill.Dec. 948, 950, 529 N.E.2d 1065, 1067 (1988), *app. denied*, 124 Ill.2d 554, 129 Ill. Dec. 148, 535 N.E.2d 913 (1989). A misrepresentation is material when either the party made the representation with the intent to defraud the insurance company, or when the representation would have affected the insurance company's decision to accept the applicant for coverage. 215 ILCS 5/154 (Michie 1993); *Apolskis v. Concord Life Ins. Co.*, 445 F.2d 31 (7th Cir.1971).

■ Country Life maintains that Negoski made a material misrepresentation on his application for insurance when he stated that further surgery for Erica was not "contemplated." Country Life contends that Negoski represented that no further surgery was possible when he stated that surgery was not "contemplated." Country Life points to Dr. Kelkian's medical records of 9/6/89 and 1/5/90 to demonstrate that Negoski indeed knew that further surgery was possible. On September 6, 1989, Dr. Kelkian noted that Erica "[m]ay need further reconstructive procedures." In his January 5, 1990 records Dr. Kelkian reported that "[i]f there are persistent problems the child may need midtarsal work such as cunnieform [sic] osteotomy and lateral column shortening."

Negoski maintains that he disclosed all relevant information to allow Country Life to properly assess its risk. He disclosed all of Erica's prior treatment, including her prior surgery and hospital stay. Negoski told Stephens of the non-surgical course of treatment Erica was undergoing at the time of the application. He contends that at the time he completed the application Erica's non-surgical treatment appeared to be working well and surgery was not planned. Negoski points to Dr. Kelkian's statement in his 1/5/90 records that "presently [surgery] is not indicated." Negoski maintains that the information he received from Dr. Kelkian,

taken as a whole, led him to believe that surgery was not contemplated for Erica. This court agrees.

Webster's Third New International Dictionary defines "contemplate" as "to have in view as a purpose: anticipate doing or performing: plan on: intend." Dr. Kelkian's medical records demonstrate that, at the time Negoski completed the application, surgery was not anticipated. Dr. Kelkian noted that surgery was not presently "indicated" for Erica. Webster's defines "indicate" as "to demonstrate the probable necessity or advisability of: be a fairly certain sign or symptom of." Thus, Dr. Kelkian's own language reveals that surgery was not planned for Erica, nor thought necessary at that time.

Country Life's contention that "contemplated" is synonymous with "thought possible" is without merit. Surely, further surgery for Erica was a possibility. However, Negoski did not say that surgery was not possible. He said that it was not contemplated and the medical records, even when read in the light most favorable to Country Life, support this. Country Life accepted the risk of further surgery when it chose to underwrite Erica's coverage. There was no misrepresentation on the part of Negoski.

Accordingly, there are no genuine issues of material fact. Negoski is entitled to judgment that as a matter of law he did not misrepresent his daughter's condition. Summary judgment is granted in favor of Negoski.

## II. *Country Life's Request to Admit*

■ Country Life contends that because Negoski failed to respond to its request to admit within 30 days, all matters therein are deemed admitted. Rule 36(a) of the Federal Rules of Civil Procedure provides that matters of which admissions are requested are admitted if no response is served within 30 days; however, courts are given discretion under that rule to shorten or lengthen this time frame. Here Negoski's response was not timely. However, the parties dispute whether this tardiness was agreed to by counsel. Negoski maintains that Country Life's counsel said she had no problems with

the late response, while Country Life contends that its counsel never stated that she would not object to the late service.

In any event, Negoski admitted seven of the eight matters requested and the result of this case does not depend upon whether request number eight is deemed admitted or denied. Request number eight states "[t]hat during the meeting between James Negoski and Larry Stephens, James Negoski represented to Larry Stephens that no further surgery for Erica's club feet was contemplated." Why Negoski denied this is not clear— no copy of plaintiff's response to the request to admit has been filed. However, the application for insurance stated that there was "no further surgery contemplated" for Erica, and Negoski signed it. Therefore, Negoski must have said something to Stephens to that effect and, even if he did not, he cannot contend otherwise because he signed the form. Thus, the tardiness of the request to admit is irrelevant—Negoski did represent that no further surgery was contemplated. Moreover, this issue is not determinative as this court grants summary judgment to Negoski based on the conclusion that he did in fact state in his application that no further surgery was contemplated. Accordingly, the fact that Negoski's response to the request to admit was not timely is of no import.

### III. *Attorneys' Fees*

■ Under ERISA a court may, in its discretion, award reasonable attorneys' fees to either party. 29 U.S.C. § 1132(g)(1). The Seventh Circuit employs a five-factor analysis in determining whether to award attorneys' fees. These factors are:

> (1) The degree of the offending parties' culpability or bad faith; (2) the degree of the ability of the offending parties to satisfy personally an award of attorneys' fees; (3) whether or not an award of attorneys' fees against the offending parties would deter other persons acting under similar circumstances; (4) the amount of benefit conferred on members of the [benefit] plan as a whole; and (5) the relative merits of the parties' positions.

*Rivera v. Benefit Trust Life Ins. Co.,* 921 F.2d 692, 697 (7th Cir.1991) (citations omitted). The bad faith or degree of the offend-

ing parties' culpability and the relative merits of the parties' positions are to be considered first. *Chicago Painters and Decorators Pension, Health and Welfare, and Deferred Sav. Plan Trust Funds v. Karr Bros., Inc.,* 755 F.2d 1285, 1291 (7th Cir.1985).

■ While this court does not believe that Country Life acted in bad faith when it denied Negoski's claim and rescinded coverage for Erica, it does seem that it acted unreasonably. Negoski fully disclosed Erica's condition, including her prior surgery and hospital stay. Stating that further surgery was not contemplated is not the same thing as stating that further surgery is not *possible.* Country Life's contention that these two terms are synonymous is without merit. Further, an applicant cannot be expected to be an absolute guarantor of his or her medical condition—all that is required is that an applicant give as accurate a depiction of his health as possible by disclosing all he knows. *See National Boulevard Bank v. Georgetown Life Ins. Co.,* 129 Ill.App.3d 73, 84 Ill.Dec. 330, 339, 472 N.E.2d 80, 89 (1984). Negoski did this. Country Life's reasons for denying coverage are simply not compelling.

Finally, Country Life has sufficient assets to satisfy an award of attorneys' fees. Perhaps this award will cause Country Life and other insurance companies to carefully consider a denial of benefits on these grounds in the future. Accordingly, attorneys' fees and costs will be awarded to Negoski. He has 14 days to submit his request for these to this court. Country Life has 14 days thereafter to respond.

### *CONCLUSION*

For the reasons hereinabove stated, defendant Country Life's motion for summary judgment is denied and plaintiff Negoski's cross-motion for summary judgment against Country Life is granted and judgment is entered for plaintiff against Country Life in the amount of $11,903.43. The claims against defendant Larry Stephens are dismissed without prejudice as moot, with leave to reinstate.