Adrienne JONES, Plaintiff,

v.

The UNITED STATES LIFE
INSURANCE COMPANY,
Defendant.

No. Civ. 97–1745(WHW).

United States District Court,
D. New Jersey.

June 30, 1998.

Ronald Washington, Washington & Garrick Washington, Montclair, NJ, for plaintiff.

Steven Del Mauro, Robert Lesko, Del Mauro & Associates, Morristown, NJ, for defendant.

## AMENDED OPINION

WALLS, District Judge.

Plaintiff Adrienne Jones ("Jones" or "plaintiff"), the administratrix of decedent Arlene Jones' estate, has brought suit to recover payment on a life insurance policy. Defendant United States Life Insurance Company ("U.S. Life" or "defendant") now moves for summary judgment by contending that plaintiff's recovery is barred because of certain material misrepresentations in the application for coverage. Under Fed. R.Civ.P. 78, this motion is decided without oral argument. For the following reasons, the Court grants summary judgment to the defendant.

### Factual and Procedural Background

The Court initially notes that plaintiff has not submitted any evidentiary material in opposition to this motion. Consequently, the pertinent facts arise solely from the affidavits and documents submitted by the defendant.

Arlene Jones was insured under an employee welfare benefit plan (the "plan") established and maintained by the American Postal Workers' Union and funded in whole or in part by a group term life insurance policy issued by defendant U.S. Life. Defendant serves as the claims administrator under the plan and determines coverage eligibility. The policy contains a standard "incontestability" clause:

> United States Life will not use a person's statements relating to his insurability to contest life insurance after it has been in force for 2 years during his life. United States Life will also not use such statement to contest an increase or benefit addition to such insurance after the increase or benefit has been in force for 2 years during his life.

Hyland Aff. Exh. A.

Arlene Jones originally was covered by a certificate of insurance which provided death

benefits of $100,000. On or about December 22, 1993, she completed an application to increase her death benefits to $200,000. She responded in the negative to the following two questions on the application:

A. Have you or your spouse ever had chest pains, heart trouble, liver trouble, high blood pressure, albumin or sugar in your urine, tuberculosis, diabetes, cancer, tumors or ulcers?

B. Have you or your spouse, during the past 5 years, consulted any physician or other practitioner or been enrolled or treated in any hospital or similar institution?

Hyland Aff. Exh. B.

If the answer to either of the above questions was "yes," the application requests details. Below these responses, Arlene Jones signed the application and certified:

To the best of my knowledge and belief, all the statements made above are true and complete. I understand that my application for group insurance will be accepted or declined on the basis of these statements. Insurance shall take effect only if a certificate is issued based on the application and the first premium is paid in full (a) during the lifetime of all proposed insureds and (b) while there is no change in insurability and health of all such persons from that stated in this application.

*Id.* U.S. Life approved the application and issued a certificate of insurance that increased her death benefits to $200,000 effective February 25, 1994.[1]

Arlene Jones died intestate on February 6, 1996. The discharge summary issued by the hospital after her death reveals that she had "a history of hypertension" and was admitted the day before her death when she complained of "the worst headache of her life." Hyland Aff. Exh. J. A ruptured cerebral aneurysm resulted in her death. *See* Hyland Aff. Exhs. D, I. Plaintiff, in her capacity as administratrix of the decedent's estate, filed a claim for death benefits. U.S. Life promptly issued a check in the amount of $100,000 which represented payment for the benefits due before the increase.

Because the death occurred within two years of the effective date of the increase, the defendant conducted a routine claim investigation. The investigation found medical records that were inconsistent with Arlene Jones' representations concerning her past medical history. Specifically, U.S. Life discovered that the decedent had received care at East Orange Hospital Family Health Care Center ("FHCC") on March 12, 1990, less than five years before she completed her application. According to those FHCC records, Arlene Jones had complained to an employee health nurse that day about a headache. *See* Hyland Exh. H. The nurse had taken her blood pressure and informed her that it was so high that she "might have a stroke." *Id.* The records also indicate that Arlene Jones admitted that she had been told two years ago that she had "borderline" blood pressure. *Id.* The FHCC staff took additional blood pressure readings of 150/140 and 130/100 while she was at the center. *See id.* The attending physician's impressions of her condition were that she suffered form cephalgia, hypertension, and possible hypertensive vascular disease. *See id.* The physician ordered blood screening and profiles. *See id.* U.S. Life's claim investigation revealed no records to indicate that Arlene

---

1. Jones disputes the effective date of the increase, This date is crucial because it determines whether U.S. Life's challenge to the additional insurance falls with the specified period of contestability. According to the affidavit of John Hyland, Director of Investigations at U.S. Life, the application was approved on January 28, 1994, but did not become effective until February 25, the date of the first paycheck reflecting the appropriate adjustment based on the new premium. *See* Hyland Supp. Aff. ¶ 5. The application states that the insurance increase would only become effective upon full payment of the first premium. The February 25 effective date is verified by the Administrator's Statement completed during the processing of plaintiff's claim. *See* Hyland Aff. Exh. E. Wesley Jarvis, a life insurance underwriter at U.S. Life, has also averred that this was the effective date of the increase. *See* Jarvis Aff. ¶ 10. Although plaintiff disputes the accuracy of this date and contends that the effective date actually is January 28, the date the application was approved, she has submitted no testimonial or documentary proof in support. Such a conclusory, unsubstantiated claim is not sufficient to raise a genuine issue of material fact as to the effective date of the benefit increase.

Jones had sought further treatment for her condition between May 12, 1990 and the date she executed the application. Records from the hospital where she was admitted before her death, though, reflect that she was hospitalized in 1994 because of her high blood pressure. *See id.*

By letter dated July 17, 1996, U.S. Life informed plaintiff that her claim for the additional $100,000 in death benefits would be denied because the decedent had not disclosed in the application her medical history as reflected by the FHCC records. The defendant maintained that had it known these facts, it would have declined additional coverage. U.S. Life promptly refunded all premiums paid during the period from February 25, 1994 until her death. Plaintiff sought administrative review of this decision. In support of her appeal, plaintiff provided no further evidence or information regarding the FHCC visit or Arlene Jones' medical condition before December 22, 1993. Her appeal was denied.

On March 5, 1997, Jones brought suit against U.S. Life in the Superior Court of New Jersey, Essex County, asserting various state law claims. Defendant removed the case to this Court. U.S. Life then moved to dismiss on the basis that all claims were preempted by ERISA. Although the Court found that all counts arose under § 502(a)(1)(B) of ERISA because they sought to recover payment under an employee benefit plan, the Court invoked the principle of judicial economy and declined to compel plaintiff to replead the claims. *See* Letter Order dated July 29, 1997. The Court denied the motion to dismiss but granted defendant's motion to strike plaintiff's claim for punitive and extracontractual damages and her demand for a jury trial on the ground that ERISA did not provide for such relief. *See id.* Defendant now moves for summary judgement on the ground of equitable fraud.

### Legal Standard for Summary Judgment

It is well established that summary judgment is appropriate where the moving party demonstrates that "there is no genuine issue of material fact and that [it] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, such would be insufficient to permit the non-moving party to carry its burden of proof. *See Celotex v. Catrett*, 477 U.S. 317, 318, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts in question." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. *See Sound Ship Building Corp. v. Bethlehem Steel Co.*, 533 F.2d 96, 99 (3d Cir.1976), *cert. denied*, 429 U.S. 860, 97 S.Ct. 161, 50 L.Ed.2d 137 (1976). Memoranda of law unsupported by evidentiary proof will not establish a genuine issue of material fact for trial. *See Schoch v. First Fidelity Bancorporation*, 912 F.2d 654, 657 (3d Cir.1990). Here the plaintiff has submitted no evidentiary materials and relies solely on its memorandum of law which seeks to attack defendant's evidence.

At the summary judgment stage the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party.

### Analysis

### I. *APPROPRIATE STANDARD OF REVIEW*

The Supreme Court has instructed that "a denial of benefits challenged under [29 U.S.C.] § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103

L.Ed.2d 80 (1989). Where the plan accords the administrator the authority to interpret the plan or evaluate an employee's eligibility for benefits, the administrator's decision to deny coverage will be overturned only if it is arbitrary and capricious. *See Abnathya v. Hoffmann–La Roche, Inc.,* 2 F.3d 40, 45 (3d Cir.1993); *Nazay v. Miller,* 949 F.2d 1323, 1335 (3d Cir.1991). Under this deferential standard, "the district court may overturn a decision of the Plan administrator only if it is 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Abnathya,* 2 F.3d at 45 (quoting *Adamo v. Anchor Hocking Corp.,* 720 F.Supp. 491, 500 (W.D.Pa.1989)).

The ERISA plan need not explicitly allocate discretionary authority to warrant an arbitrary and capricious review standard; such discretion may be impliedly conferred from the language employed. *See Hullett v. Towers, Perrin, Forster & Crosby, Inc.,* 38 F.3d 107, 114 (3d Cir.1994); *Luby v. Teamsters Health, Welfare, & Pension Trust Funds,* 944 F.2d 1176, 1180 (3d Cir.1991). U.S. Life contends the policy allocates it such discretion by providing (1) that full-time Union employees are eligible for life insurance only if they submit "evidence of insurability satisfactory to United States Life" and (2) that payment will be made upon the submission of "due proof of death." Hyland Aff. Exh. A. According to defendant, this "requirement of 'proof' and 'evidence ... satisfactory to United States Life' implicitly grants to U.S. Life the discretion to determine eligibility under the plan based on U.S. Life's assessment of that proof and/or evidence." Def.Br. at 24. The requirement of satisfactory proof of eligibility has been held to vest an administrator with sufficient discretion so as to justify an arbitrary and capricious standard of review. *See Miller v. Metropolitan Life Ins. Co.,* 925 F.2d 979, 983–84 (6th Cir.1991); *McLain v. Metropolitan Life Ins. Co.,* 820 F.Supp. 169, 174–75 (D.N.J.1993).

Defendant's argument is flawed because the discretion to which it refers does not apply to the determination at issue here. The arbitrary and capricious standard is limited to review of determinations involving the specific area where the plan grants the administrator discretionary authority. *See Luby,* 944 F.2d at 1179–80 (3d Cir.1991). A designation of discretion in a certain area of plan administration does not impliedly confer discretion to make other decisions affecting the award of benefits. *See id.* Although the requirement that an applicant submit satisfactory "evidence of insurability" does indicate that the initial determination concerning eligibility is to some extent discretionary, the challenged decision here is the rescission of additional benefits because of the alleged material misrepresentations in the decedent's application. The plan does not explicitly nor implicitly indicate that the administrator has discretion to make such a determination or that it deserves deference. The Court recognizes that material misrepresentations in an insurance application may justify the rescission of coverage, *see infra* Part II, but the Court's review of a denial of benefits on this ground need not necessarily be deferential.

The Court views the decision at issue here to be a factual determination distinct from the assessment of whether satisfactory evidence of insurability was initially submitted and whether due proof of death has been provided. Although the Supreme Court in *Bruch* did not specifically address the proper standard of review to be applied to factual findings, the Third Circuit has held that an administrator's factual determinations are subject to de novo review if the plan does not afford the administrator discretion to make such determinations. *See Mitchell v. Eastman Kodak Co.,* 113 F.3d 433, 438 (3d Cir.1997); *Luby,* 944 F.2d at 1183. Here, the plan does not grant the administrator discretion to make the challenged determination. An independent review best promotes the primary goal of ERISA "to protect the interests of plan members and their beneficiaries." *Id.* at 1184. Here, U.S. Life concluded that the additional coverage should be declined because Arlene Jones had materially misrepresented information regarding her medical history. Whether she did so is a factual determination that should be reviewed de novo. This standard affords employees more protection from the unjust rescission of their coverage and is thus consistent with ERISA's objective "to protect

contractually defined benefits[.]" *See Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 148, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985).

■ The Court holds that an administrator's decision to deny death benefits under an ERISA plan because of material misrepresentations in the insurance application is subject to de novo review. The Court may, but is not required to, look beyond the evidence presented to the administrator at the time of the challenged decision. *See Luby*, 944 F.2d at 1185. If the record is sufficiently developed, the district court may render an independent decision based on the evidence presented at the administrative level. *See id.*

## II. *WHETHER THE ALLEGED MISREPRESENTATIONS BAR RECOVERY OF THE ADDITIONAL DEATH BENEFITS*

There is a question as to whether federal or state law governs this action. Under New Jersey law, a false statement in an application for life insurance bars the claimant's right to recover if "such false statement materially affected either the acceptance of the risk or the hazard assumed by the insurer." N.J.S.A. § 17B:24–3(d). Whether ERISA preempts this state provision when the benefits are pursuant to an employee benefit plan poses an interesting legal question not yet addressed in this circuit, nor by either party's submission.

The Fifth and Sixth Circuits have held that ERISA preempts state laws that define the circumstances under which a policy may be rescinded based on an insured's misrepresentations in an application. *See Davies v. Centennial Life Ins. Co.*, 128 F.3d 934 (6th Cir. 1997) (Ohio statute is preempted); *Tingle v. Pacific Mutual Ins. Co.*, 996 F.2d 105 (5th Cir.1993) (Louisiana statute is preempted). *But see Security Life Ins. Co. of America v. Meyling*, 954 F.Supp. 1421 (E.D.Cal.1997) (California statute not preempted). These courts of appeals have found that the rele-

vant state laws fell within ERISA's broad preemptive scope because they "relate[d] to" employee benefit plans covered by ERISA and were not encompassed by ERISA's "savings clause" which excepts from preemption those state statutes that "regulate insurance." *See* 29 U.S.C. §§ 1144(a), 1144(b)(2)(A). *Tingle* and *Davies* instructed district courts sitting in Ohio and Louisiana to apply federal law to fraud-in-the-application defenses to ERISA claims.[2] The preemption issue was central to the decisions in these cases because the state laws required that the claimant have an intent to deceive to render the coverage invalid—a requirement abandoned in the formulation of the federal common law by *Davies* and *Tingle*. *See Davies*, 128 F.3d at 943; *Tingle v. Pacific Mutual Ins. Co.*, 837 F.Supp. 191, 193 (W.D.La.1993). Section 17B:24–3(d) has no such mens rea requirement. Because the federal common law articulated first in *Tingle* and later adopted by *Davies* and other federal district courts is substantially similar to New Jersey's law, as explained more fully below, it is not necessary to determine whether N.J.S.A. § 17B:24–3(d) is preempted by ERISA. The result of this case would be the same under either state or federal law. The Court will leave the preemption question for another day.

### A. *Federal Law*

ERISA does not specifically address the effect of misrepresentations in an insurance application for enrollment in a group term life insurance policy. Where ERISA is silent on an issue, a court may look to federal common law. *See Davies*, 128 F.3d 934, 943; *Hauser v. Life General Sec. Ins. Co.*, 56 F.3d 1330, 1333 (11th Cir.1995). The "federal common law of rights and obligations," *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), concerning entitlement to insurance benefits "must embody common-sense canons of contract interpretation." *Burnham v. Guardian Life Ins.*

---

**2.** Other district courts also have held that federal common law controls the determination of whether a misrepresentation in an application for insurance under an ERISA plan justifies the

denial of benefits. *See, e.g., Espinosa v. Guardian Life Ins.*, 856 F.Supp. 711, 716 (D.Mass. 1994); *Negoski v. Country Life Ins. Co.*, 843 F.Supp. 372, 374 (N.D.Ill.1993).

*Co. of America,* 873 F.2d 486, 489 (1st Cir. 1989); *see also McLain,* 820 F.Supp. at 175

On remand in *Tingle,* the district court of the Western District of Louisiana, applying traditional principles of contract law, concluded that "the insurer must prove that the insured made a fraudulent or material misrepresentation in his application for enrollment that justifiably induced the issuance of the policy" to avoid coverage. *See Tingle,* 837 F.Supp. at 193. The court found that an insured's good faith was irrelevant, contrary to state law, and that the misrepresentation is material if it "materially affects the insurer's risk or the hazard assumed by the insurer." *Id.* The Court notes that this standard is nearly identical to New Jersey's statutory language. It is also in accord with other federal cases. *See Clyde A. Wilson Int'l Investigations, Inc. v. Travelers Ins. Co.,* 959 F.Supp. 756, 760–61 (S.D.Tex.1997); *Negoski v. Country Life Ins. Co.,* 843 F.Supp. 372, 375 (N.D.Ill.1993). The Sixth Circuit in *Davies* adopted the *Tingle* standard as the federal common law governing an insurer's attempt to avoid an insurance policy due to an applicant's misrepresentations. *See Davies,* 128 F.3d at 943.

### B. *New Jersey Law*

New Jersey law is relevant regardless whether ERISA preempts N.J.S.A. § 17B:24–3(d): when ERISA is silent, a federal court may refer to state law for guidance in the formulation of federal common law provided that the state law is consistent with ERISA's underlying policies. *See Davies,* 128 F.3d at 943; *Hauser,* 56 F.3d at 1333; *Coots v. United Employers Fed'n,* 865 F.Supp. 596, 603 (E.D.Mo.1994); *Espinosa v. Guardian Life Ins.,* 856 F.Supp. 711, 716 (D.Mass.1994); *Negoski,* 843 F.Supp. at 374. In construing N.J.S.A. § 17B:24–3(d), the New Jersey Supreme Court has decided that "[t]o rescind a policy, an insurer need not show that the insured actually intended to deceive." *Ledley v. William Penn Life Ins. Co.,* 138 N.J. 627, 635, 651 A.2d 92 (1995). To the contrary, "[e]ven an innocent misrepresentation can constitute equitable fraud justifying rescission." *Id.* Section 17B:24–3(d) is written in the disjunctive; a misrepre-

sentation on an application precludes recovery if it "materially affected either the acceptance of the risk or the hazard assumed by the insurer." Concealment of past medical history is "material" if it "naturally and reasonably influence[d] the judgment of the underwriter in making the contract at all, or in estimating the degree or character of the risk, or in fixing the rate premium." *Massachusetts Mut. Life Ins. Co. v. Manzo,* 122 N.J. 104, 115, 584 A.2d 190 (1991) (quoting *Kerpchak v. John Hancock Mut. Life Ins. Co.,* 97 N.J.L. 196, 198, 117 A. 836 (1922)).

New Jersey courts have found that "[e]quitable fraud ... distinguishes between subjective and objective questions on the application." *Ledley,* 138 N.J. at 635, 651 A.2d 92. Objective questions seek information within the insured's knowledge, "such as whether the applicant has been examined or treated by a physician." *Formosa v. Equitable Life Assurance Soc'y,* 166 N.J.Super. 8, 15, 398 A.2d 1301 (App.Div.), *cert. denied,* 81 N.J. 53, 404 A.2d 1153 (1979). Subjective questions instead "seek to probe the applicant's state of mind" and include ambiguous questions concerning "the state of the applicant's health or whether the applicant has or has had a specified disease or illness." *Id.* Courts are generally more lenient in their assessment of responses to subjective questions. *See Ledley,* 138 N.J. at 636, 651 A.2d 92 ("When a question is unambiguous and calls for a statement of fact, misrepresentation or concealment is unexcusable."). An applicant's response to a subjective question will not constitute equitable fraud "if a negative answer is a correct statement of his knowledge and belief[.]" *Formosa,* 166 N.J.Super. at 15, 398 A.2d 1301. If the applicant answered a subjective question to the best of her knowledge and did not know that the response was false, she may still recover benefits.

### C. *The Accuracy and Materiality of Arlene Jones' Representations*

■ As demonstrated above, state and federal law in this area are substantially similar. Neither requires the insured to establish an intent to deceive on the part of the applicant, and both define a misrepresenta-

tion as material if it materially affects either the risk of the insurer or the hazard assumed by the insurer. Under this standard, plaintiffs negative responses to the two questions on the insurance application bar recovery of the claimed $100,000 of additional death benefits.

■ U.S. Life has the burden of proof to establish equitable fraud as an affirmative defense. *See* 21A Appleman, Insurance Law & Practice §§ 12428, 12429 (1980). No genuine issue of fact exists as to whether Arlene Jones misstated information in her application for additional coverage. There is no dispute that the decedent received a medical consultation at the FHCC on March 12, 1990 and was diagnosed with hypertension, cephalgia, and possible hypertensive vascular disease. *See* Hyland Aff. Exh. H. According to the medical records of that visit, the employee nurse at the post office had warned Arlene Jones then that she had high blood pressure. *See id.* The records also show that she had been informed two years earlier that her blood pressure was "borderline." *See id.*

■ Notwithstanding, Arlene Jones answered questions A and B on the application in the negative. Question A is considered a "subjective" question because it asks if the applicant has a specific illness or disease. *See Formosa,* 166 N.J.Super. at 15, 398 A.2d 1301. An inaccurate response to a subjective question may constitute equitable fraud when the applicant actually knew that the response provided misrepresented her health status. *See id.* Here, no reasonable juror could consider the uncontroverted evidence of the FHCC visit and conclude that Arlene Jones did not know that she had a history of high blood pressure when she applied for additional benefits in late 1993. She admitted to the FHCC physician that she had been warned that her blood pressure was borderline in 1988 and that the employee nurse had told her that she had high blood pressure. Although plaintiff argues that there is a genuine issue of material fact that Arlene Jones had a "severe" case of high blood pressure, Pl., Br. at 5, she has produced no evidence of the probable state of the condition or the decedent's awareness of it. By denying that

she "ever had ... high blood pressure," Arlene Jones misstated her medical history. Hyland Aff. Exh. B.

Question B is an "objective question." It is uncontroverted that the decedent received a medical consultation on March 12, 1990, less than five years before she applied for additional coverage. Her negative answer to question B is an "inexcusable" misstatement of fact. *Ledley,* 138 N.J. at 636, 651 A.2d 92. Plaintiff's false responses to questions A and B constitute equitable, if not legal, fraud.

Defendant has conclusively established that these misrepresentations were material under both New Jersey and federal common law. If the decedent had disclosed her history of high blood pressure, U.S. Life was required, pursuant to its underwriting guidelines, to perform a medical examination and take several further blood pressure tests before issuing additional coverage. *See* Jarvis Aff. Exh. H. Without full disclosure, U.S. Life was deprived of the opportunity to conduct the tests necessary to evaluate the risk incurred. Wesley Jarvis, a U.S. Life underwriter, avers in his affidavit that had Arlene Jones recorded the same blood pressure readings at such an evaluation as she had in March 1990, the company would have not increased her coverage. *See* Jarvis Aff. ¶ 25. Jarvis also states that U.S. Life would have certainly declined additional coverage if it had known of the decedent's past medical history and her failure to seek further medical treatment after the FHCC visit despite a medical professional's advice that she undergo blood testing. *See id.* ¶ 21.

Plaintiff has submitted no evidence in any form to contradict Jarvis' assessment of the materiality of the nondisclosures. Instead, plaintiff argues that there is genuine issue of material fact as to whether additional coverage necessarily would have been denied had Arlene Jones provided accurate responses. Plaintiff contends that U.S. Life had other available options such as charging a higher premium or excluding coverage for certain risks. *See* Pl. Br. at 10. However, the New Jersey Supreme Court explicitly has rejected the proposition "that only those misrepresentations that render an applicant uninsurable are material to the acceptance of the risk."

*Manzo,* 122 N.J. at 115, 584 A.2d 190. The misrepresentation need only "materially affect the acceptance of the risk." There is no genuine issue of fact that the concealment of the FHCC visit and the decedent's history of high blood pressure influenced the decision to extend coverage and affected the estimation of the risk assumed.

Moreover, the concealment "materially affected the hazard assumed." The hazard assumed by U.S. Life was the death of Arlene Jones. Where death results from the nondisclosed condition, the hazard is obviously materially affected by the misrepresentation. *See Golden v. Northwestern Mut. Life, Ins. Co.,* 229 N.J.Super. 405, 423, 551 A.2d 1009 (App.Div.1988) ("If the death resulted from some medical condition which an insured failed to reveal by false statements in the application, that hazard would of course be materially affected."). Here, Arlene Jones died from a ruptured cerebral aneurysm after complaining of a severe headache, the same complaint which she had when she reported to the FHCC. It is apparent that her hypertension and high blood pressure contributed to her death. Concealment of the very condition that caused death can justify the rescission of a life insurance policy. *See Daly v. Paul Revere Variable Annuity Ins. Co.,* 199 N.J.Super. 584, 589–90, 489 A.2d 1279 (Law Div.1984) (insurer had ground to revoke life insurance policy when insured failed to disclose heart illness on application and then died of heart disease the next month), *aff'd,* 206 N.J.Super. 185, 502 A.2d 48 (App.Div.1985), *cert. denied,* 103 N.J. 504, 511 A.2d 674 (1986).

From its independent evaluation of the evidence, the Court concludes that there is no genuine issue of material fact that Arlene Jones misrepresented information in her application for additional life insurance coverage. The concealed information was material as a matter of law. The Court recognizes that it premises its decision on records from a medical consultation more than three years before the decedent completed her insurance application. Nevertheless, full disclosure of past medical history is essential to permit insurers such as defendant to properly evaluate risk and any cost to be charged.

## Conclusion

For the foregoing reasons, the Court grants summary judgment to U.S. Life.

**SO ORDERED.**

## ORDER

This matter arises on the motion by defendant United States Life Insurance Company for summary judgment dismissing the complaint of plaintiff Adrienne Jones. Upon consideration of the submissions of the parties and for the reasons stated in the accompanying opinion, the Court rules as follows:

The Court **grants** defendant's motion for summary judgment and dismisses **with prejudice** all claims against it.

**SO ORDERED.**