Janet B. DAVIES;  Donald Davies,
Plaintiffs–Appellees,

v.

CENTENNIAL LIFE INSURANCE COM-
PANY, and Dun & Bradstreet Plan Ser-
vices, Inc., Defendants–Appellants,

Jerome J. Siegel, D.D.S., Third–
Party Defendant.

No. 95–4121.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 15, 1996.

Decided Oct. 16, 1997.

Renisa A. Dorner (argued and briefed), Ryan, Wise, Miller & Dorner, Toledo, OH, for Appellant.

William H. Blessing (argued and briefed), Cincinnati, OH, for Appellee.

Before: KENNEDY and BATCHELDER, Circuit Judges; EDGAR, District Judge.*

## OPINION

BATCHELDER, Circuit Judge.

Defendants Centennial Life Insurance Co. and Dun & Bradstreet Plan Services, Inc. appeal the dismissal of their state law counterclaim for rescission of plaintiff Janet Davies's employer-provided health insurance policy. Defendants also appeal the judgment in favor of plaintiffs Janet and Donald Davies on plaintiffs' ERISA claim for withheld health-care benefits. For the following reasons, we **AFFIRM** in part, **REVERSE** in part, and **REMAND** this action to the district court for further proceedings.

## I. FACTS

In late 1991, Dr. Jerome Siegel, D.D.S., hired plaintiff Donald Davies. As part of his employee benefits package, Donald was entitled to participate in Siegel's group health policy, which provided comprehensive medical benefits to a covered employee, his spouse, and other dependents. Defendant Centennial Life Insurance Company issued the medical insurance under Siegel's policy.

Donald and his wife, Janet, prepared and submitted an application for health insurance with Centennial. The application contains a variety of health history questions because Centennial does not require applicants to undergo a physical examination. The policy clearly states that Centennial may rescind coverage if an applicant misrepresents or omits any information.

This appeal concerns the manner in which Janet Davies answered two health history questions. Centennial's application asks:

A. TO THE BEST OF YOUR KNOWL-EDGE, HAVE YOU OR YOUR DEPEN-

---

* The Honorable R. Allan Edgar, United States District Judge for the Eastern District of Tennes-  see, sitting by designation.

DENTS LISTED ABOVE EVER BEEN OR ARE YOU/THEY CURRENTLY BEING TREATED FOR OR ADVISED THAT YOU/THEY HAD ANY DISORDER OF THE FOLLOWING? IF YES, CIRCLE APPROPRIATE CONDITION(S):

\* \* \*

4. The circulatory system including heart or blood vessels, abnormal blood pressure, stroke, anemia?

Janet Davies answered "no" to this question. The application further inquires:

B. 2. During the past 5 years, have you or your dependents had medical consultation, been hospitalized or are you/they currently taking medication?

Because Janet answered this question in the affirmative, she was required to complete the following chart:

GIVE FULL DETAILS BELOW FOR EACH QUESTION
IN SECTION A OR B ABOVE WHICH IS
ANSWERED YES
(ATTACH A SEPARATE SHEET OF PAPER IF MORE SPACE IS NEEDED)

| No | Name | Injury or Illness | Dates | Duration | Degree of Recovery | Name of Doctors-Address |
|----|------|-------------------|-------|----------|--------------------|--------------------------|
|    |      |                   |       |          |                    |                          |
|    |      |                   |       |          |                    |                          |
|    |      |                   |       |          |                    |                          |

In the "injury or illness" column Janet listed only her two prior childbirths. Centennial accepted plaintiffs' application, effective December 1, 1991.

In 1992, Janet Davies was hospitalized for a molar pregnancy. Donald Davies promptly advised Centennial of Janet's medical condition and submitted a claim for coverage. Defendant Dun & Bradstreet, Centennial's claim processor,[1] acknowledged receiving the claim, but indicated that there would be a delay in processing because of a need to investigate Janet's health history.

The investigation revealed that Janet had a history of heart abnormalities. Janet's 1985 medical records indicate the existence of an abnormal cardiac murmur and a rare palpitation. She underwent an echocardiogram and was diagnosed with mitral valve prolapse. In 1986, Janet experienced "fleeting sharp chest pain" and underwent an electrocardiogram. The test indicated that Janet had a normal heart. Problems resumed in 1987, as Janet experienced episodes of hard palpitations, chest pain, and lightheadedness. She received at least two holter monitor tests and an electrocardiogram later that year. Subsequently, Dr. Alan M. Armstrong informed Janet that she suffered from mitral valve prolapse. Dr. Armstrong, however, told Janet that no follow-up care was necessary because she did not have a serious cardiac disorder. None of this information appeared in Janet's application for health insurance.

As a result of the investigation, Centennial rejected plaintiffs' claim and rescinded Janet's health insurance policy. Centennial explained that this decision was not based on Janet's molar pregnancy, but rather her health history and diagnoses of mitral valve prolapse. Plaintiffs appealed this decision,

---

1. Dun & Bradstreet investigated claims and communicated with insureds on Centennial's behalf. Centennial, however, retained final decision-making authority regarding whom to accept for coverage and which claims it would pay.

but to no avail. Centennial refused to reinstate Janet's coverage and pay her claim for benefits.

## II. PROCEDURAL HISTORY

On April 3, 1994, plaintiffs filed a two-count complaint in the United States District Court for the Southern District of Ohio against Centennial and Dun & Bradstreet. Plaintiffs alleged that defendants violated § 502(a) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a), by rescinding Janet's group health policy and denying her claim for benefits. Plaintiffs further alleged that defendants breached their fiduciary duties under ERISA by acting in bad faith during the administrative appeal process. *See* 29 U.S.C. § 1109. They requested compensatory damages in the amount of medical expenses incurred as a result of the rescission and ERISA's statutory penalty as provided under 29 U.S.C. § 1132(c).

On August 30, 1994, defendants filed a counterclaim against Janet Davies and Dr. Jerome Siegel seeking rescission of Janet Davies's insurance policy pursuant to § 3923.14 of the Ohio Code, OHIO REV.CODE ANN. § 3923.14 (Anderson 1989).

Both parties moved for summary judgment. The district court denied these motions and the case proceeded to a bench trial in July 1995. On September 13, 1995, the district court dismissed defendants' counterclaim as preempted by ERISA. The court also dismissed plaintiffs' breach of fiduciary duty claim. The court, however, found in favor of plaintiffs on their § 502(a) claim and awarded $37,153.45 in damages. Defendants filed a timely notice of appeal.

## III. DISCUSSION

█  We review for clear error the findings of fact made by the district court after a bench trial; the court's legal conclusions we review *de novo. Boyer v. Douglas Components Corp.,* 986 F.2d 999, 1003 (6th Cir. 1993).

**2.** For purposes of ERISA's preemption clause, the term "State laws" includes "all laws, decisions, rules, regulations, or other State action

### A.

#### 1.

Defendants seek to rescind Janet Davies's health insurance policy pursuant to § 3923.14 of the Ohio Code. That section states in relevant part:

> The falsity of any statement in the application for any policy of sickness and accident insurance shall not bar the right to recovery thereunder, or be used in evidence at any trial to recover upon such policy, unless it is clearly proved that such false statement is willfully false, that it was fraudulently made, that it materially affects either the acceptance of the risk or the hazard assumed by the insurer, that it induced the insurer to issue the policy, and that but for such false statement the policy would not have been issued.

OHIO REV.CODE ANN. § 3923.14 (Anderson 1989). Defendants argue that Centennial would not have issued Janet Davies's health insurance policy if it had known her complete health history. Defendants assert that Centennial, pursuant to its underwriting guidelines, may not accept for coverage any applicant diagnosed with mitral valve prolapse, unless that applicant is asymptomatic and not taking medication. The district court never reached the merits of this argument, however, because the court held that ERISA preempts § 3923.14 and defendants' claim for rescission under that statute. Defendants appeal this ruling.

█  Whether ERISA preempts a particular state law is a question of law, which we review *de novo. Crabbs v. Copperweld Tubing Prods. Co.,* 114 F.3d 85, 89 (6th Cir. 1997).

█  Section 514(a) of ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA.[2] 29 U.S.C. § 1144(a). ERISA's preemption clause casts a wide net, *California Div. of Labor Standards Enforcement v. Dillingham Constr.,*

having the effect of law." 29 U.S.C. § 1144(c)(1).

*N.A., Inc.,* —— U.S. ——, ——, 117 S.Ct. 832, 837, 136 L.Ed.2d 791 (1997); *Cromwell v. Equicor–Equitable HCA Corp.,* 944 F.2d 1272, 1276 (6th Cir.1991), and its terms are given their broad, common-sense meaning. *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 47, 107 S.Ct. 1549, 1552–53, 95 L.Ed.2d 39 (1987). ERISA does not, however, preempt state laws that have " 'only a tenuous, remote, or peripheral connection with covered plans, as is the case with many laws of general applicability.' " *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 661, 115 S.Ct. 1671, 1680, 131 L.Ed.2d 695 (1995) (quoting *District of Columbia v. Greater Washington Bd. of Trade,* 506 U.S. 125, 130 n. 1, 113 S.Ct. 580, 583 n. 1, 121 L.Ed.2d 513 (1992)).

■ As noted above, ERISA preempts state laws that "relate to" an employee benefits plan covered by ERISA. 29 U.S.C. § 1144(a). The Supreme Court has explained that a state law "relates to" an employee benefits plan if the law "has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983). Subsequent cases have made it clear that "connection with" and "reference to" are two distinct and alternative prongs. In other words, ERISA preempts state laws having either a "connection with" or "reference to" an ERISA plan. *See Dillingham Constr.,* —— U.S. at ——, 117 S.Ct. at 837–38.

■ The issue thus becomes whether § 3923.14 has a "connection with" or "reference to" an ERISA plan. Looking at the latter prong first, it is clear that defendants have the better of the "reference to" arguments. The Supreme Court has recently explained that a state law has "reference to" an ERISA plan if the law "acts immediately and exclusively upon ERISA plans," or if the existence of an ERISA plan "is essential to the law's operation." *Id.* at ——, 117 S.Ct. at 838. The Ohio law at issue, § 3923.14, has neither of these attributes. Section 3923.14 does not impose requirements by reference to ERISA-covered insurance plans, *see District of Columbia v. Greater Washington Bd.*

*of Trade,* 506 U.S. 125, 130–31, 113 S.Ct. 580, 583–84, 121 L.Ed.2d 513 (1992), nor is the existence of such plans essential to its operation. *See Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 139–40, 111 S.Ct. 478, 482–84, 112 L.Ed.2d 474 (1990). Section 3923.14 is clearly aimed at *any* contract of accident and health insurance.

■ The "connection with" prong is a different story. Defendants seek to apply § 3923.14, the Ohio law controlling rescission of accident and health insurance contracts, to plaintiffs' claim for benefits under a health insurance contract governed by ERISA. Although § 3923.14 does not act exclusively on ERISA-governed accident and health insurance contracts, if the statute is applied in this case, it will surely be applied to such a contract. To determine whether a state law has a "connection with" an ERISA plan, we must "look both to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, as well as to the nature of the effect of the state law on ERISA plans." *Dillingham Constr.,* at ——, 117 S.Ct. at 838 (internal quotation marks and citations omitted). Section 3923.14 clearly implicates Congress's concern, as expressed through ERISA, for the interests of participants in employee benefits plans. *See Shaw,* 463 U.S. at 90, 103 S.Ct. at 2896. Indeed, if defendants prove the necessary elements of § 3923.14, then they will be able to rescind Janet Davies's health insurance contract and deny benefits. This being the case, it is clear that § 3923.14 has a "connection with" the ERISA-governed plan that Janet Davies's contract of insurance is part of. *See Security Life Ins. Co. of Am. v. Meyling,* 954 F.Supp. 1421, 1425 (E.D.Cal.1997).

Defendants, citing our decision in *Perry v. P\*I\*E Nationwide, Inc.,* 872 F.2d 157 (6th Cir.1989), assert that § 3923.14 does not "relate to" the ERISA-governed plan under which plaintiffs seek benefits because the conduct supporting the claim for rescission—Janet Davies's alleged misrepresentations—occurred before the parties entered into the health insurance contract. This argument is unpersuasive for two reasons. First, *Perry* is not controlling. As we recently explained

in *Massachusetts Casualty Insurance Co. v. Reynolds,* 113 F.3d 1450 (6th Cir.1997), *Perry* held "that state law claims for rescission of an ERISA plan and for restitution based on fraud and misrepresentation occurring before the ERISA plan existed [are] not preempted, *the claims not being for 'plan benefits or an increase in plan benefits.'"* *Id.* at 1454 (emphasis added) (quoting *Perry,* 872 F.2d at 162). In the present case, however, plaintiffs' claim is for plan benefits; it is defendants' claim for rescission that is not. Because defendants' claim is essentially an affirmative defense, it is inextricably interwoven with plaintiffs' claim for benefits. Resolution of defendants' claim for rescission requires an interpretation of the terms and conditions of Janet Davies's health insurance contract, a contract that is part of the ERISA-governed plan under which she seeks benefits. *See Zuniga v. Blue Cross & Blue Shield of Michigan,* 52 F.3d 1395, 1402 (6th Cir.1995) (holding plaintiff's breach of contract claim preempted by ERISA and noting that the claim necessitates an evaluation of the employee benefits plan at issue).

Second, the mere fact that the allegedly false statements were made before there was a contract of insurance does not mean that § 3923.14 has no connection with an ERISA plan. Defendants issued the contract in fact, and plaintiffs are now seeking benefits pursuant to the ERISA-governed plan of which the contract is part. As noted above, defendants are simply attempting to deny benefits under the plan by application of § 3923.14. Surely this constitutes a "connection with" the plan. Moreover, if § 3923.14 were applied and defendants failed to establish that they were entitled to rescission, the contract would continue to be part of the plan. Under defendants' logic, § 3923.14 has no connection with any contract of insurance because the statute deals only with conduct preceding the issuance of the contract. We do not agree with this contention.

For the preceding reasons, we hold that § 3923.14 "relates to" an employee benefits plan governed by ERISA.

**2.**

This, however, is not the end of our preemption analysis. Although ERISA's preemptive force is vast, it is not unqualified. ERISA contains a "savings clause" that excepts from preemption state laws that "regulate insurance." 29 U.S.C. § 1144(b)(2)(A). Therefore, if § 3923.14 "regulates insurance," then § 3923.14 and defendants' claim for rescission escapes ERISA's preemptive axe.

The Supreme Court has developed a two-pronged approach for determining whether a state law regulates insurance within the meaning of ERISA's savings clause. *See Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 48–49, 107 S.Ct. 1549, 1553–54, 95 L.Ed.2d 39 (1987); *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 739–40, 742–44, 105 S.Ct. 2380, 2388–89, 85 L.Ed.2d 728 (1985); *see also Cisneros v. UNUM Life Ins. Co. of Am.,* 115 F.3d 669, 673–74 (9th Cir.1997); *McMahan v. New England Mut. Life Ins. Co.,* 888 F.2d 426, 429 (6th Cir. 1989). First, we consider the plain language of the savings clause itself and determine whether the state law fits the common-sense definition of insurance regulation. *Pilot Life,* 481 U.S. at 48, 107 S.Ct. at 1553. Second, we consider whether the state law regulates the "business of insurance" as defined by cases interpreting the McCarran–Ferguson Act, 15 U.S.C. §§ 1011–1015.[3] *Id.* Three criteria are relevant to the latter inquiry: (1) whether the state law has the effect of transferring or spreading policyholder risk; (2) whether the state law regulates an integral part of the policy relationship between the insurer and insured; and (3) whether the state law is limited to entities within the insurance industry. *Id.* at 48–49, 107 S.Ct. at 1553–54 (quoting *Union Labor Life Ins. Co. v. Pireno,* 458 U.S. 119, 129, 102 S.Ct. 3002, 3009, 73 L.Ed.2d 647 (1982)). These criteria must be considered in combination, and, standing alone, no single one is dispositive. *Pireno,* 458 U.S. at 129, 102 S.Ct. at 3008–09; *see also Pilot Life,* 481 U.S. at 50–51, 107 S.Ct. at 1554–55; *UNUM Life Ins. Co. of Am.,* 115

---

**3.** The McCarran–Ferguson Act provides, in relevant part, "The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business." 15 U.S.C. § 1012(a).

F.3d at 674–75. *But see CIGNA Healthplan of Louisiana, Inc. v. Louisiana,* 82 F.3d 642, 650 (5th Cir.) (explaining that state statute must satisfy all three McCarran–Ferguson Act criteria), *cert. denied,* —— U.S. ——, 117 S.Ct. 387, 136 L.Ed.2d 304 (1996)..

■ In order to fall within the common-sense definition of insurance regulation, a state law must do more than affect the insurance industry it "must be specifically directed toward that industry." *Pilot Life,* 481 U.S. at 50, 107 S.Ct. at 1554. At first glance, it appears that § 3923.14, which resides in Ohio's insurance code, is "specifically directed" toward the insurance industry. Upon closer examination, however, it becomes clear that this is not necessarily the case. Section 3923.14, although associated with the insurance industry, has its roots firmly planted in the general principles of Ohio contract law. *See id.* A party to any contract procured by fraud, not just a contract for accident and health insurance, may rescind that contract. *See Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118, 122 (1954) (setting forth the elements that must be established to rescind a contract procured by fraud); *Metropolitan Life Ins. Co. v. Triskett Illinois, Inc.,* 97 Ohio App.3d 228, 646 N.E.2d 528, 532 (1994) (same). Therefore, whether § 3923.14 comports with the common-sense definition of insurance regulation is a close question.

■ Application of the McCarran–Ferguson criteria does not lead to the conclusion that § 3923.14 regulates the "business of insurance." Section 3923.14 does not spread policy holder risk, and therefore does not satisfy the first McCarran–Ferguson criterion. The Supreme Court has made it clear that in this context, the "spreading" of risk refers to the acceptance of a number of risks, "some of which involve losses, and that such losses are spread over all the risks so as to enable the insurer to accept each risk at a slight fraction of the possible liability upon it." *Pireno,* 458 U.S. at 128 n. 7, 130, 102 S.Ct. at 3008 n. 7, 3009 (internal quotation marks and citations omitted). In other words, the risk-spreading principle concerns the risk of injury that the insurer has contractually agreed to bear for the insured. *Id.* at 130–31, 102 S.Ct. at 3009–10; *see also*

*UNUM Life Ins. Co. of Am.,* 115 F.3d at 674; *Smith v. Jefferson Pilot Life Ins. Co.,* 14 F.3d 562, 569 (11th Cir.1994).

In *Tingle v. Pacific Mutual Insurance Co.,* 996 F.2d 105 (5th Cir.1993), the Fifth Circuit considered whether a Louisiana rescission statute quite similar in language and effect to § 3923.14 of the Ohio Code fell within the purview of ERISA's savings clause. The statute at issue in *Tingle* provided:

> In any application for life or health insurance made in writing by the insured, all statements therein made by the insured shall, in the absence of fraud, be deemed representations and not warranties. The falsity or [sic] any such statement shall not bar the right to recovery under the contract unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer.

*Id.;* at 108 (quoting LA.REV.STAT. ANN. § 22:619(B)). The court held that the statute did not shift policyholder risk, reasoning that although the statute spread the legal risks of innocent misrepresentations onto the insurer, it did not spread the risk of health insurance coverage for which the parties contracted. *Id.; see also DeBruyne v. Equitable Life Assurance Soc'y of the United States,* 920 F.2d 457, 469 (7th Cir.1990) (holding that ERISA preempts a New York insurance law prohibiting the misrepresentation of an insurance contract's "terms, benefits or advantages" because, among other things, the law does not spread policyholder risk; it " 'forces the insurer to bear the legal risks associated with [fraudulent] policy language' ") (alteration in original) (quoting *McMahan v. New England Mut. Life Ins. Co.,* 888 F.2d 426, 429 (6th Cir.1989)); *Coots v. United Employers Fed'n,* 865 F.Supp. 596, 603 (E.D.Mo. 1994) (holding that ERISA preempts a Missouri statute shifting the legal risk of an insured's innocent misrepresentation onto the insurer because the statute does not "affect in any way the substantive content of the policy itself"). *But see Security Life Ins. Co. of Am. v. Meyling,* 954 F.Supp. 1421, 1425 (E.D.Cal.1997) (holding that a California statute allowing insurers to rescind coverage

when an insured misrepresents material facts spreads risk because the statute helps insurers set appropriate premiums).[4]

This view is consistent with our decision in *McMahan v. New England Mutual Life Insurance Co.*, 888 F.2d 426, 429 (6th Cir.1989), where we held that ERISA preempts Kentucky case law requiring courts to interpret ambiguous terms in an insurance contract in favor of the insured. As did the *Tingle* court, we reasoned that the savings clause did not apply to this principle of contract construction because, among other things, the principle did "not effect a spreading or transferring of policyholders' insurance risk, but rather forces the insurer to bear the legal risks associated with ambiguous policy language." *Id.*

Like the state law at issue in *Tingle*, § 3923.14 does not spread policyholder risk. Although it forces the insurer to bear the legal risks associated with innocent misrepresentations in an insurance application, § 3923.14 does not alter the risks for which the insurer and insured originally contracted—specific accident and medical costs. *See UNUM Life Ins. Co. of Am.*, 115 F.3d at 674; *Smith*, 14 F.3d at 569–70; *see also Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 743, 105 S.Ct. 2380, 2391, 85 L.Ed.2d 728 (1985) (holding that a statute requiring certain insurers to provide mental-health benefits affects a spreading of the risk).

Section 3923.14 does not satisfy the second or third McCarran–Ferguson criteria either. The statute does not regulate an integral part of the policy relationship between the insurer and insured because it "does not define the terms of the relationship between" those parties. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 51, 107 S.Ct. 1549, 1555, 95 L.Ed.2d 39 (1987). Section 3923.14 simply states that whatever the substantive terms of

the contract for accident or health insurance may be, certain material misrepresentations in the application will justify rescission of the insurance contract. The statute does not affect the substantive terms of the contract. *Smith*, 14 F.3d at 570 ("Moreover, where a state statute has been found to affect an integral part of the relationship, the statute has affected the substantive terms of the contractual relationship."); *see also Metropolitan Life*, 471 U.S. at 743, 105 S.Ct. at 2391 (holding that a mandated benefits law regulates an integral part of the relationship between the insurer and insured "by limiting the type of insurance that an insurer may sell to the policyholder"); *UNUM Life Ins. Co. of Am.*, 115 F.3d at 674 (holding that the "notice-prejudice rule" regulates an integral part of the relationship between the insurer and insured by "effectively creat[ing] a mandatory contract term"). Lastly, as previously noted, even if § 3923.14 is specifically directed at the insurance industry, it is merely a codification of the general principles of contract law and fraudulent inducement. *See Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118, 122 (1954) (listing the elements that must be established to rescind a contract procured by fraud); *Metropolitan Life Ins. Co. v. Triskett Illinois, Inc.*, 97 Ohio App.3d 228, 646 N.E.2d 528, 532 (1994) (same); *see also Pilot Life*, 481 U.S. at 51, 107 S.Ct. at 1554–55 (stating that the savings clause is not applicable where Mississippi law of bad faith developed from general principles of tort and contract law); *Kelley v. Sears, Roebuck & Co.*, 882 F.2d 453, 456 (10th Cir.1989) (applying same reasoning to Colorado law of bad faith).

For the preceding reasons, we hold that § 3923.14 is not a statute that regulates the business of insurance for purposes of ERISA's savings clause, and consequently

---

4. Unlike the *Meyling* court, we believe there is a difference between the actual spreading of risk over the pool of potential losses, and what it costs to spread risk. In other words, the fact that, absent the right to rescind the policy if it was fraudulently obtained, the insurer would have to charge more in premiums in order to accomplish the spread, does not affect the actual spread of the risk. *See Pireno*, 458 U.S. at 128 n. 7, 102 S.Ct. at 3008 n. 7. If the insurer has to pay benefits on the fraudulently obtained insurance

as well as the honestly obtained insurance, the cost of each of the risks will likely be higher, but the principle of spread is no different. *See id.* at 128, 102 S.Ct. at 3008 (" 'Such cost-savings arrangements may well be sound business practice, and may well inure ultimately to the benefit of policyholders in the form of lower premiums, but they are not the "business of insurance." ' ") (quoting *Group Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205, 214, 99 S.Ct. 1067, 1074, 59 L.Ed.2d 261 (1979)).

falls outside the scope of that clause. We therefore hold that ERISA preempts § 3923.14 and defendants' claim under that statute for rescission of Janet Davies's health insurance policy.

## B.

■ Defendants contend that even if ERISA preempts their claim under § 3923.14, they are entitled to rescind Janet Davies's health insurance policy under the federal common law. " 'A federal court may create federal common law based on a federal statute's preemption of an area only where the federal statute does not expressly address the issue before the court.' " *Flacche v. Sun Life Assurance Co. of Canada*, 958 F.2d 730, 735 (6th Cir.1992) (quoting *Nachwalter v. Christie*, 805 F.2d 956, 959 (11th Cir.1986)); *see also Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 92 (6th Cir.1997) ("[F]ederal common law is developed under ERISA only in those instances in which ERISA is silent or ambiguous."). Because ERISA does not address the effect of a misrepresentation or omission in a health insurance application, we look to the federal common law in this case. While state law may guide us in determining the proper federal common law standards, we are not bound to apply a particular state's law. *Dingledine v. Central Reserve Life Ins. Co.*, 934 F.Supp. 892, 898 (S.D.Ohio 1996).

■ In *Tingle v. Pacific Mutual Insurance Co.*, 837 F.Supp. 191 (W.D.La.1993), the court addressed the very issue presented by the instant case. The *Tingle* court reasoned that general principles of contract law should govern the effect of a misrepresentation in an insurance application. *Id.* at 193. The court held that an insurer is entitled to avoid an insurance policy if the insurer proves that the insured made a fraudulent or material misrepresentation in his insurance application that justifiably induced the issuance of the policy.[5] *Id.* The court explained that the insured's good faith is irrelevant, and that a misrepresentation is "material" if it "materially affects the insurer's risk or the

hazard assumed by the insurer." *Id.* We believe that the test delineated by the *Tingle* court is a correct statement of the law and therefore adopt it as our own.

■ Although the district court generally applied the *Tingle* test in the present case, it used a different definition of materiality. The district court held that a misrepresentation or omission is material only if it is connected with or related to the illness or injury for which the insured seeks payment of benefits. Because the information regarding Janet Davies's consultations with physicians and subsequent diagnoses of mitral valve prolapse were not "related to" her molar pregnancy claim, the district court held that defendants could not rescind Janet Davies's health insurance policy. In other words, the district court held that the misrepresentations or omissions in Janet Davies's insurance application were not material. The court therefore found that defendants violated § 502(a) of ERISA by not providing Janet Davies with the health-care benefits due under her insurance policy. *See* 29 U.S.C. § 1132(a)(1)(B).

We reject the district court's definition of materiality. In *Stipcich v. Metropolitan Life Insurance Co.*, 277 U.S. 311, 316, 48 S.Ct. 512, 513, 72 L.Ed. 895 (1928), the Supreme Court observed that "[i]nsurance policies are traditionally contracts *uberrimae fidei* and a failure by the insured to disclose conditions affecting the risk, of which he is aware, makes the contract voidable at the insurer's option." Insurance companies seek a wealth of health history information from applicants because that information is extremely important to the underwriting decision. This is especially true for insurance companies such as Centennial, who do not require applicants to submit to a physical examination. *See Coots v. United Employers Fed'n*, 865 F.Supp. 596, 603 (E.D.Mo.1994). The ERISA common law governing insurance policies, contracts of the most abundant faith, should reward the honest, not the dishonest. As the court in *New York Life Insurance Co.*

5. Because the misrepresentation in *Tingle* was an express one, the court did not explicitly mention "omissions." We believe, however, that the holding of *Tingle* covers material misrepresentation by omission as well as express misrepresentation.

v. *Wittman,* 813 F.Supp. 1287, 1298 (N.D.Ohio 1993), explained:

> A requirement of connection between the falsehood and the claim of the insured leads inevitably to the results [sic] that a dishonest applicant would assume no risk by his duplicity unless he haplessly succumbed to the very condition he concealed. The causal connection requirement encourages insurance applicants to take the chance that their dishonesty will not be discovered. He will still be covered by insurance even if, had he been honest in the first instance, he would never have received any (or the same) coverage. The honest applicant, on the other hand, is denied the same coverage which the dishonest person can keep, even after the dishonesty is discovered. Honest policy holders are then forced to pay higher premiums by virtue of the fact that insurers are forced to pay for policies procured by false statements.

In other words, the "related to the claim" test rewards unscrupulous applicants because they, in all practicality, have nothing to lose by providing insurance companies with false information. *Mutual Benefit Life Ins. Co. v. JMR Elecs. Corp.,* 848 F.2d 30, 34 (2d Cir. 1988). This test deprives the insurer of its ability to choose the risks it wishes to insure. Moreover, the *Tingle* court's definition of materiality, which we have adopted, is in accord with the definition propounded by many of the other federal courts that have addressed this particular area of ERISA common law. *See Hauser v. Life General Sec. Ins. Co.,* 56 F.3d 1330, 1333–34 (11th Cir.1995); *Coots v. United Employers Fed'n,* 865 F.Supp. 596, 603 (E.D.Mo.1994); *Tingle v. Pacific Mut. Ins. Co.,* 837 F.Supp. 191, 193 (W.D.La.1993); *Negoski v. Country Life Ins. Co.,* 843 F.Supp. 372, 375 (N.D.Ill.1993); *Martin v. Pate,* 749 F.Supp. 242, 244 (S.D.Ala.1990), *aff'd sub nom. Martin v. Continental Investors,* 934 F.2d 1265 (11th Cir.1991); *see also* BARRY R. OSTRANGER & THOMAS R. NEWMAN, HANDBOOK ON INSURANCE COVERAGE DISPUTES § 3.01(d) (6th ed. 1993) ("Under the most widely accepted test of materiality, a fact that has been misstated or omitted is deemed 'material' if it could reasonably be considered as affecting the insur-er's decision to enter into the contract, or its evaluation of the degree or character of the risk, or its calculation of the premium to be charged.") (citations omitted).

Because the district court applied the wrong definition of materiality, we reverse the judgment in favor of plaintiffs on their claim for withheld health-care benefits and remand this action to the district court for a determination of whether defendants are entitled to rescind Janet Davies's health insurance policy pursuant to the federal common law test set out above.

### C.

The district court found that defendants violated § 502(a) of ERISA by withholding from Janet Davies the health care benefits due to her under the terms of defendants' health insurance policy. 29 U.S.C. § 1132(a)(1)(B). The district court awarded plaintiffs $37,153.45. This sum, however, represents all of Janet Davies's medical expenses, not just those that are covered under defendants' insurance policy. For example, the damage award includes bills for psychiatric treatment, but defendants' policy contains specific limitations on reimbursement for such medical expenses. Moreover, the record indicates that plaintiffs have not exhausted all of the deductibles required under the policy. Therefore, if on remand the district court finds defendants liable, it must determine which, if any, of Janet Davies's medical expenses are covered under defendants' policy before awarding damages.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's ruling that ERISA preempts defendants' state law claim for rescission of Janet Davies's health insurance policy; we **REVERSE** the district court's judgment in favor of plaintiffs on their § 502(a) claim for unpaid benefits; and we **REMAND** this action to the district court for a determination of whether defendants are entitled to rescind Janet Davies's health in-

surance policy under the federal common law as set forth in this opinion.