**CITIZENS INSURANCE COMPANY OF AMERICA, Plaintiff,**

v.

**AMERICAN MEDICAL SECURITY, INC., Defendant.**

No. 1:99–CV–784.

United States District Court,
W.D. Michigan,
Southern Division.

Feb. 23, 2000.

Robert L. Goldenbogen, Meghan A. McGlynn, Garan, Lucow, Miller & Seward, PC, Port Huron, MI, for plaintiff.

Arthur J. LeVasseur, Lauren J. Hammett, Fischer, Franklin & Ford, Detroit, MI, for defendant.

## *OPINION*

ROBERT HOLMES BELL, District Judge.

This case presents a priority dispute between two insurers whose mutual in-

sured, Sherele Fifelski, was injured in an automobile accident on April 29, 1997. At the time of her accident Fifelski was insured by Plaintiff Citizens Insurance Company ("Citizens"), a Michigan no-fault automobile insurance carrier. She was also insured under a United Wisconsin Life Insurance Company ("UWLIC") group insurance policy administered by American Medical Security, Inc. ("AMS"). The UWLIC policy was purchased by Fifelski's employer, Fifelski Auto Service, to fund an employee benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq.

The Citizens no-fault automobile insurance policy contains a coordination of benefits ("COB") clause which provides that it will not pay personal injury protection benefits if its insured has other health care coverage.[1]

The UWLIC policy contains an excess coverage clause which similarly provides that it will not pay benefits if its insured has other insurance providing coverage for medical expenses.[2]

After the accident Citizens paid medical expenses in the amount of $4,450.79, and AMS paid medical expenses in the amount of $20,095.47 on behalf of Fifelski.

Plaintiff Citizens filed a complaint for declaratory relief in state court seeking an order declaring that it is entitled to recoup from Defendant AMS the medical expenses it paid on behalf of Fifelski, and further declaring that Defendant AMS is the primary health care benefit provider for Fifelski's medical expenses arising out of the April 29, 1997, accident. Defendant AMS removed the action to federal court and filed a counterclaim seeking a judgment in its favor and against Plaintiff Citizens in the amount of $20,095.47. This matter is currently before the Court on the parties' cross-motions for summary judgment.

**I.**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.

In this case there are no material facts in dispute. The parties' cross-motions for summary judgment require this Court to resolve the purely legal primacy of coverage issue between a coordinated no-fault policy and an insurance policy purchased by an ERISA plan. This issue has not been squarely addressed by the Sixth Circuit.

Section 3109a of the Michigan No–Fault Act "mandates that no-fault carriers offer coordination of benefits at reduced premiums when the insured has 'other health and accident coverage.'"[3]

---

1. The Citizens COB provision provides in pertinent part:
   We do not provide Personal Injury Protection Coverage for:
   1. Medical expenses for you or any "family member":
   a. To the extent that similar benefits are paid, payable, or required to be paid, under any individual, blanket or group accident or disability insurance, service, benefit, reimbursement or salary continuance plan (excluding Medicare benefits provided by the federal government) ....

2. The UWLIC policy contains the following excess coverage provision:
   No benefits are payable for Injury or Sickness for which there is other insurance providing medical payments or medical expense coverage, regardless of whether the other coverage is primary, excess or contingent. If We make payment on Your behalf, You agree to assign to Us any right You have against the other insurer.
   UWLIC Certificate of Group Insurance, Policy Number CMM 1000 R, Claim Provisions, p. 21.

3. M.C.L. § 500.3109a; M.S.A. § 24.13109(1) provides in pertinent part:
   An insurer providing personal protection insurance benefits shall offer, at appropriately reduced premium rates, deductibles and exclusions reasonably related to other health and accident coverage on the insured....

*Federal Kemper Ins. Co., Inc. v. Health Ins. Admin., Inc.,* 424 Mich. 537, 383 N.W.2d 590 (1986). As a result of this statutory requirement, Michigan has developed a priority of coverage rule known as the Federal Kemper Rule which provides that when there is a priority dispute between a no-fault insurer which has issued a coordinated policy under § 3109a and an accident victim's other health coverage provider, both of which contain a COB provision, the health insurer will be deemed primary. 424 Mich. at 551, 383 N.W.2d 590.

There is no problem in applying the Federal Kemper Rule when the health coverage provider is governed by state law. However, when a no-fault COB provision conflicts with a COB provision in a Plan governed by ERISA, the Court must consider the effects of ERISA's preemption clause:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan. . . .

29 U.S.C. § 1144(a). This broad preemption clause is qualified by the saving clause:

> Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities.

29 U.S.C. § 1144(b)(2)(A), and the deemer clause.

> Neither an employee benefit plan ... nor any trust established under such plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts,

banks, trust companies, or investment companies.

29 U.S.C. § 1144(b)(2)(B).

The application of these three clauses has been summarized by the Sixth Circuit as follows:

> [I]f a state law "relate[s] to" an ERISA benefit plan it is preempted; but if the state law "regulates insurance" it is not preempted. But an ERISA covered employee benefit plan that provides insurance coverage is "deemed" not to be an insurance company for purposes of state laws regulating insurance, and ERISA, therefore, preempts such state laws.

*Lincoln Mut.,* 970 F.2d at 209–10 (quoting *Liberty Mutual Insurance Group v. Iron Workers Health Fund of Eastern Michigan,* 879 F.2d 1384, 1386 (6th Cir.1989)).

■ In light of the ERISA preemption clause, cases decided after *Federal Kemper* have limited the reach of the Federal Kemper Rule. In *Auto Club Ins. Ass'n v. Frederick & Herrud, Inc.,* 443 Mich. 358, 505 N.W.2d 820, (1993), the Michigan Supreme Court held that where there is a conflict between the COB clause in a no-fault policy and a COB clause in a self-funded ERISA plan, the COB clause in the ERISA plan must be given effect:

> Although the Michigan statute purports to regulate insurance and not ERISA plans, we conclude that it has a direct effect on the administration of the plans in these cases because it would virtually write a primacy of coverage clause into the plans. This is the type of state regulation that would lead to administrative burdens that the historical progression of federal cases recounted earlier forbids.

443 Mich. at 387, 505 N.W.2d 820.

> [W]e hold that an unambiguous COB clause in an ERISA health and welfare benefit plan must be given its plain meaning despite the existence of a similar clause in a no-fault policy because any conflict created by the requirements of M.C.L. § 500.3109a; M.S.A.

§ 24.13109(1) and this Court's interpretation of the statute would have the direct effect of dictating the terms of the ERISA plans.

*Id.* at 389–90, 505 N.W.2d 820. Although *Federal Kemper* was overruled in part by *Frederick & Herrud*, the Court emphasized that the primacy of health care coverage over that in a no-fault policy continues with respect to "all cases not within the purview of this narrow holding." *Id.* at 390, 505 N.W.2d 820.

The Sixth Circuit decisions on the primacy of coverage between self-funded ERISA plans and no-fault policies are consistent with *Frederick & Herrud.* For example, in *Auto Club Ins. Assoc. v. Health and Welfare Plans,* 961 F.2d 588 (6th Cir.1992), the Sixth Circuit held that "self-insured ERISA plans, including self-insured ERISA plans containing coordination of benefits clauses, are not reached by 500.3109a." *Id.* at 593. Even if the ERISA plan is partially insured, through the purchase of stop-loss insurance, the ERISA plan's COB clause controls. *Lincoln Mut. Cas. Co. v. Lectron Products, Inc. Employee Health Benefit Plan,* 970 F.2d 206, 210 (6th Cir.1992). In *Auto Owners Ins. Co. v. Thorn Apple Valley,* 31 F.3d 371, 374 (6th Cir.1994), the Sixth Circuit stated that "when a traditional insurance policy and a qualified ERISA plan contain conflicting coordination of benefits clauses, the terms of the ERISA plan, including its COB clause, must be given full effect." *Id.* at 374.

Defendant AMS contends this line of cases controls the outcome in this case and requires that the ERISA plan's COB clause be given full effect, regardless of whether the ERISA plan is self-funded or insured. Plaintiff Citizens, on the other hand, contends that this line of cases applies only to self-funded ERISA plans,[4] and that it is not controlling where, as here, the ERISA plan is fully insured.

The issue for this Court is whether the ERISA preemption recognized by these cases is limited to self-funded ERISA plans, or whether it applies equally to fully insured ERISA plans.

Defendant AMS relies on *Lincoln Mutual, supra,* in support of its contention that ERISA preempts application of § 3109a to a fully insured ERISA plan.

The ERISA plan at issue in *Lincoln Mutual* was a self-funded plan that purchased stop-loss insurance. When a dispute arose between the no-fault carrier and the Plan as to priority, the Court observed that application of § 3109a would have a direct effect on the administration of the plan, regardless of whether the plan had purchased stop-loss insurance. The Court accordingly held that ERISA preempted application of § 3109a. 970 F.2d at 210.

Defendant AMS contends that because the ERISA plan at issue in *Lincoln Mutual* had purchased stop-loss insurance, *Lincoln Mutual* stands for the proposition that ERISA preempts § 3109a irrespective of whether the ERISA plan at issue is self-funded or funded by insurance.

Defendant AMS has overstated the holding of *Lincoln Mutual* by improperly equating a plan that purchases stop-loss insurance with a plan that is fully insured. In *Lincoln Mutual* the Sixth Circuit was careful to distinguish a self-funded plan from a plan that purchased insurance, noting that the state may regulate the companies that insure ERISA plans:

> Contrary to Lincoln's assertion, *FMC [Corp. v. Holliday,* 498 U.S. 52, 111 S.Ct.

---

4. Although the Court of Appeals decision does not identify the Thorn Apple Valley Plan as a self-funded plan, it was so identified by the district court. *See Auto–Owners Ins. Co. v. Thorn Apple Valley,* 818 F.Supp. 1078, 1079 (W.D.Mich.1993). On appeal neither party disputed that ERISA preempted § 3109a. 31 F.3d at 374. This is undoubtedly because the

plan was self-funded and fell squarely within the authority of *Auto Club Ins. Assoc. v. Health and Welfare Plans, Inc.,* 961 F.2d 588 (6th Cir.1992), which held that self-insured ERISA plans containing coordination of benefits clauses are not reached by § 3109a. *Id.* at 593.

403, 112 L.Ed.2d 356 (1990)] does not hold that states are free to regulate ERISA plans insofar as the plans are insured. Instead, we read the *FMC* Court to hold that states may not regulate ERISA plans but may, consistent with the traditional state regulation of insurance, regulate the companies that insure ERISA plans. Although a plan may be affected by the state's regulations "insofar as [the regulations] apply to the plan's insurer," the effect is "indirect" and, therefore, is not prohibited by federal law. In other words, the deemer clause relieves ERISA benefit plans— both uninsured and insured plans—from direct state regulation, but, because the clause does not relieve a plan's insurer, state regulation may have an incidental, or "indirect," effect on ERISA plans. Consequently, in the case at bar, ERISA preempts the application of state law even though the Plan holds stop-loss insurance for losses in excess of $75,000.

*Lincoln Mut.,* 970 F.2d at 210 (citation and footnote omitted).

The "plans" at issue in *Frederick & Herrud* were also self-funded ERISA plans which had purchased stop-loss insurance. 443 Mich. at 388, 505 N.W.2d 820. The Supreme Court noted that the existence of stop-loss insurance had no bearing on its decision because "the discretion to pay or deny claims remains in the ERISA plan and was never delegated to the insurers." 443 Mich. at 390, 505 N.W.2d 820.

Thus, contrary to Defendant's argument, a self-funded plan that has purchased stop-loss insurance is still a self-funded plan. It is also essentially different than a fully insured plan. As the Fourth Circuit explained in *American Medical Security, Inc. v. Bartlett,* 111 F.3d 358 (4th Cir. 1997):

Under a self-funded plan, the employer who promises the benefit incurs the liability defined by the plan's terms. That liability remains the employer's even if it has purchased stop-loss insurance and even if the stop-loss insurer becomes insolvent.... In contrast, when a plan buys health insurance for participants and beneficiaries, the plan participants and beneficiaries have a legal claim directly against the insurance company, thereby securing the benefits even in the event of the plan's insolvency.... It is this fundamental difference that precludes the Maryland Insurance Agency from regulating self-funded plans but permits them to regulate insurance companies that provide health benefits to plans for their participants.

*Id.* at 364.

The Supreme Court has routinely distinguished between insured plans and self-funded plans.

We have repeatedly held that state laws mandating insurance contract terms are saved from preemption under § 1144(b)(2)(A). *See Metropolitan Life,* 471 U.S. at 758, 105 S.Ct. 2380 ("Massachusetts' mandated-benefit law is a 'law which regulates insurance' and so is not pre-empted by ERISA as it applies to insurance contracts purchased for plans subject to ERISA"); *FMC Corp.,* 498 U.S. at 64, 111 S.Ct. 403 ("[I]f a plan is insured, a State may regulate it indirectly through regulation of its insurer and its insurer's insurance contracts.").

*UNUM Life Ins. Co. of America v. Ward,* 526 U.S. 358, 119 S.Ct. 1380, 1390, 143 L.Ed.2d 462 (1999).

■ In light of these distinctions between self-funded plans and insured plans, case law governing self-funded plans does not necessarily control the disposition of this case which involves a fully insured plan. In order to determine whether § 3109a is preempted by a fully insured plan, the Court must go back to the ERISA provisions that guide the preemption analysis.

The parties agree that § 3109a of Michigan's no fault law "relates to" the employee benefit plan at issue in this case. Thus, the first test for preemption is met. The Court must then determine whether § 3109a "regulates insurance" under the

facts of this case, and whether it is thus "saved" from preemption under ERISA's saving clause, § 514(b)(2)(A). The parties disagree on this point.

■ To determine whether a state law "regulates insurance" within the meaning of the saving clause the Supreme Court has instructed that the court must first ask whether, from a common-sense view of the matter, the contested prescription regulates insurance. *UNUM*, 526 U.S. at 367, 119 S.Ct. at 1386, 143 L.Ed.2d at 472. The court then considers three factors to determine whether the regulation fits within the business of insurance as that phrase is used in the McCarran–Ferguson Act, 15 U.S.C. § 1011 et seq.: 1) whether the practice has the effect of transferring or spreading a policyholder's risk; 2) whether the practice is an integral part of the policy relationship between the insurer and the insured; and 3) whether the practice is limited to entities within the insurance industry. *UNUM*, at 367, 119 S.Ct. at 1386, 143 L.Ed.2d at 472.

Defendant cites *Pilot Life Ins. Co. v. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), and *Davies v. Centennial Life Ins. Co.*, 128 F.3d 934 (6th Cir. 1997), in support of its contention that because § 3109a has never been construed to be exclusively limited to or aimed at the insurance industry or to entities that are insurers, it does not "regulate insurance" and fails the first tier of the saving clause analysis.

There is no requirement that, in order to be saved, the subject law must affect only traditional insurance. Questions of ERISA preemption and application of the saving and deemer clauses are considered on a case by case basis. *UNUM*, 526 U.S. at 363, 119 S.Ct. at 1384, 143 L.Ed.2d at 469. Sensible construction of ERISA dictates that the key terms "regulates insurance" and "relate to" as used in the preemption and saving clauses be measured in context. *Id.* Where, as here, this statutory scheme is applied to an insurance policy purchased by an ERISA plan, the law is clearly a law which "regulates insurance."

Neither can § 3109a be analogized to the statutes at issue in *Pilot Life* and *Davies*. The statute at issue in *Pilot Life* was found to be pre-empted and not saved because, although it operated to regulate an insurance company, "the roots of this law are firmly planted in the general principles of Mississippi tort and contract law." 481 U.S. at 50, 107 S.Ct. 1549. Similarly, in *Davies*, the court held that the subject statute was not saved from preemption because, although incorporated into the Ohio Insurance Code, it was a law which had "its roots firmly planted in the general principles of Ohio Contract Law." *Id.* 128 F.3d at 941.

In contrast to the statutes at issue in *Pilot Life* and *Davies*, § 3109a has its roots firmly planted in Michigan insurance law. It was enacted as part of the no-fault insurance act "to contain both auto insurance costs and health care costs, while eliminating duplicative recovery." *Federal Kemper*, 424 Mich. at 551, 383 N.W.2d 590.

Defendant also contends that § 3109a does not "regulate insurance" because it does not meet all of the McCarran Ferguson factors set forth in *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 740, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985). Defendant contends § 3109a does not have the effect of transferring the policy holder's risk, it does not regulate an integral part of a policy relationship between the insured and insurer, and it fails to meet the requirement that the state law be limited to entities within the insurance industry.

■ In *UNUM* the Supreme Court rejected the assertion that a state regulation must satisfy all three McCarran–Ferguson factors in order to "regulate insurance" under ERISA's saving clause. 526 U.S. at 375, 119 S.Ct. at 1389, 143 L.Ed.2d at 476. These factors are considerations to be weighed; none of these criteria is necessarily determinative in itself. *Id.* (quoting *Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 129, 102 S.Ct. 3002, 73 L.Ed.2d 647 (1982)). Moreover, the Sixth Circuit

has previously observed that § 3109a "regulates insurance" and thus escapes preemption under ERISA's savings clause:

> [T]he Michigan coordination of benefits law controls the terms of insurance contracts. The Michigan law clearly "regulates insurance" within the meaning of the savings clause. This conclusion comports both with a common sense view of the statutory language and with a more formal assessment that the practice falls within the meaning of "business of insurance" covered by the McCarran-Ferguson Act.

*Northern Group Serv., Inc. v. Auto Owners Ins. Co.,* 833 F.2d 85, 89–90 (6th Cir. 1987), *impliedly overruled on other grounds as noted in Auto Club Ins. Ass'n v. Health and Welfare Plans, Inc.,* 961 F.2d 588, 593 (6th Cir.1992).

If § 3109a is saved under the facts of this case from preemption, then we must consider whether the deemer clause steps in to shelter the plan from regulation.

■ Because the deemer clause prevents a state from deeming an ERISA plan to be an insurance company, self-insured ERISA plans are generally sheltered from state insurance regulation. *UNUM,* 526 U.S. at 367, n.2, 119 S.Ct. at 1386, n.2, 143 L.Ed.2d at 472, n. 2. It is application of the deemer clause that accounts for the preemption determination in *Frederick & Herrud, Auto Club,* and *Lincoln Mutual.* The analysis is set forth most clearly in *Lincoln Mutual:*

> Upon review of the facts in the instant case, we conclude that Mich.Comp.Laws § 500.3109a, as it relates to the Plan, is not "saved" under the insurance-regulation exception to preemption because, under the "deemer" clause, the Plan is " 'deemed' not to be an insurance company for purposes of state laws," such as § 3109a, that purport to regulate insurance contracts.

*Lincoln Mutual,* 970 F.2d at 210.

■ The deemer clause has no application when the plan is fully insured. "Our interpretation of the deemer clause makes clear that if a plan is insured, a State may regulate it indirectly through regulation of its insurer and its insurer's insurance contracts; if the plan is uninsured, the State may not regulate it." *FMC Corp.,* 498 U.S. at 64, 111 S.Ct. 403.

> **We read the deemer clause to exempt self-funded ERISA plans from state laws that "regulat[e] insurance" within the meaning of the saving clause**.... State laws that directly regulate insurance are "saved" but do not reach self-funded employee benefit plans because the plans may not be deemed to be insurance companies, other insurers, or engaged in the business of insurance for purposes of such state laws. **On the other hand, employee benefit plans that are insured are subject to indirect state insurance regulation.** An insurance company that insures a plan remains an insurer for purposes of state laws "purporting to regulate insurance" after application of the deemer clause. The insurance company is therefore not relieved from state insurance regulation. The ERISA plan is consequently bound by state insurance regulations insofar as they apply to the plan's insurer.

*Id.,* at 61, 111 S.Ct. 403 (emphasis added).

"Plans may self-insure or they may purchase insurance for their participants. Plans that purchase insurance—so-called 'insured plans'—are directly affected by state laws that regulate the insurance industry." *Metropolitan Life,* 471 U.S. at 732, 105 S.Ct. 2380.

Based upon this clear language in *Metropolitan Life,* the Court is compelled to conclude that the fully insured plan in this case is subject to indirect state insurance regulation through § 3109a. The impact of § 3109a and the Federal Kemper Rule on the plan in this case is only indirect. Giving effect to § 3109a would have no effect on the administration of the ERISA plan in this case. It would not write a primacy of coverage clause into the Plan. It is only the UWLIC insurance policy that would be affected by the application of § 3109a. Any effect on the Plan would be

indirect. Accordingly, the Court holds that the UWLIC policy is primarily liable for Sherele Fifelski's medical expenses.

This Court is aware of four cases in which this identical priority issue has been addressed. The courts in all of those cases came to the same conclusion as this Court: i.e., that the UWLIC policy issued to participants of AMS administered plans is insurance subject to Michigan law; that § 3109a is "saved" from preemption; and that pursuant to § 3109a the UWLIC insurance is primarily liable for the medical expenses of the mutually insured. *See, American Med. Sec., Inc. v. Allstate Ins. Co.*, 235 Mich.App. 301, 597 N.W.2d 244 (1999) [5]; *CNA Ins. Co. v. United Wisconsin Life Ins. Co.*, Case No. 99–40105 (E.D.Mich. Jan. 20, 2000) (Gadola, J.) (unpublished); *Progressive v. United Wisconsin Life Ins. Co.*, 84 F.Supp.2d 848 (E.D.Mich.2000) (Edmunds, J.) (unpublished); *American Med. Sec., Inc. v. AAA Michigan*, Case No. 97–75632 (E.D.Mich. September 9, 1999) (Cohn, J.) (unpublished), appeal docketed, No. # 99–2110 (6th Cir. Oct. 8, 1999).

In conclusion, the insurance policy issued by UWLIC to the ERISA plan is primarily liable for Ms. Fifelski's medical expenses resulting from her April 29, 1997, automobile accident. Accordingly, Plaintiff's motion for summary judgment will be granted, Defendant's motion for summary judgment will be denied, Defendant's counterclaim will be dismissed, and Plaintiff is awarded recoupment of $4,450.79 from Defendant AMS.

An order and judgment consistent with this opinion will be entered.

### ORDER AND JUDGMENT

In accordance with the opinion entered this date,

IT IS HEREBY ORDERED that Defendant American Medical Security, Inc.'s, motion for summary judgment (Docket # 12) is **DENIED**.

IT IS FURTHER ORDERED that Plaintiff Citizens Insurance Company of America's motion for summary judgment (Docket # 13) is **GRANTED**.

IT IS FURTHER DECLARED that the UWLIC policy administered by Defendant AMS is primarily liable for the subject medical expenses incurred by the mutually insured, Sherele Fifelski, as a result of an automobile accident which occurred on April 29, 1997.

IT IS FURTHER DECLARED that Plaintiff Citizens is liable only on an excess basis for the subject medical expenses.

IT IS FURTHER ORDERED that Defendant/Counter–Plaintiff AMS's counterclaim is **DISMISSED**.

IT IS FURTHER ORDERED that Plaintiff is awarded recoupment from Defendant AMS in the amount of $4,450.79.

---

**5.** As the Michigan Court of Appeals noted in *American Med. Sec., Inc. v. Allstate Ins. Co.*,

In this case, the parties agree that plaintiff's group plan qualifies as an employee welfare benefit plan under the ERISA. The plan, however, is clearly not self-funded, but rather has purchased insurance through

United Wisconsin. The issue is whether § 3109a is preempted in a situation where the ERISA plan is not self-funded but has purchased insurance coverage. We hold that it is not.

235 Mich.App. at 304–05, 597 N.W.2d 244 (footnote omitted).